**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Case **No. 11-cv-00585**

**STATE OF COLORADO**
**COLORADO DEPARTMENT OF HUMAN SERVICES**
**DIVISION OF VOCATIONAL REHABILITATION**
**BUSINESS ENTERPRISE PROGRAM**

          Plaintiff

v.

**THE UNITED STATES OF AMERICA,**
**THE UNITED STATES DEPARTMENT OF THE AIR FORCE,**
**MICHAEL B. DONLEY, SECRETARY OF THE AIR FORCE,**

          Defendants.

---

MEMORANDUM OPINION AND ORDER
(REDACTED)

---

Kane, J.

Plaintiff has filed a complaint against Defendants, alleging violations of the Randolph-

Shepard Act, 20 U.S.C. §§ 107 *et seq.* ("RS-A").  This matter is currently before me on

Plaintiff's Motion for Preliminary Injunction (doc. 2).[1]  Plaintiff seeks an injunction preserving

the status quo pending its exhaustion of the administrative remedies provided by the RS-A.  The

---

[1]  Initially, Plaintiffs filed an Application for a Temporary Restraining Order along with their
Motion for Preliminary Injunction.    After the USAF agreed to extend Plaintiff's contract until
April 30, 2011, however, Plaintiff agreed to withdraw its Application for Temporary Restraining
Order.  *See* Unopposed Motion to Withdraw Application for Temporary Restraining Order (doc.
8).

parties completed their briefing on the Motion for Preliminary Injunction, and they presented

oral arguments at a hearing on April 26, 2011.  Having considered the parties' briefs and their

oral argument, and based on the forgoing discussion and analysis, the motion is DENIED.

BACKGROUND

The Randolph-Shepard Act, 20 U.S.C. §§ 107 *et seq.* ("RSA"), requires that blind

persons licensed by state agencies be given priority to operate vending facilities on federal

property.  Plaintiff is the State Licensing Agency ("SLA") in Colorado, and it is responsible for

licensing blind vendors and submitting bids and applications on their behalf to federal agencies.

20 U.S.C. § 107a(a)(5), (c).  It files suit on behalf of Mr. Don Hudson, a licensed blind vendor

who is the incumbent provider of services at the High Country Inn Dining Facility ("HCI Dining

Facility"), a 385-seat facility that provides full food services to personnel at the United States Air

Force Academy in Colorado Springs, Colorado.  Plaintiff's contract was for the period of

October 1, 2006, through January 31, 2011.  Plaintiff is currently in the third month of a

permissible six-month extension.

In anticipation of the end of Plaintiff's contract, the United States Air Force ("USAF")

posted a request for proposal ("RFP") on September 1, 2011, seeking offers for the provision of

food services at the HCI Dining Facility.  The original deadline for proposals was October 21,

2010, but due to a series of modifications and amendments to the original RFP, the final deadline

for submission of proposals was extended to December 13, 2010.

As part of the RFP, the USAF specified the criteria and process by which it would

evaluate all bids.  At Step 1, each offeror would be assigned a "confidence rating," an assessment

of the offeror's ability to perform the contract based on demonstrated past and present

performance.  At Step 2, all offerors receiving an unacceptable confidence rating would be eliminated from the process, and all remaining offers would be ordered according to total price. At Step 3, all bids falling outside the competitive range (defined as offers within 5% of the lowest offered price) would be eliminated from the process.  At Step 4, priority was to be given under the RS-A if any of the remaining bids had been submitted by an SLA.  If no SLA bid remained, Step 5 specified that the remaining bids would be assessed based on cost and confidence rating.

In response to this RFP, Plaintiff submitted an offer to provide the requested services.  Its offer received the highest confidence rating possible, and it was among the bids ordered by price at Step 2.  The lowest remaining offer, submitted by Crystal Enterprises, Inc., was for a total price of $ 6,835,677.60.  Thus, at Step 3 the competitive range was established as all bids with a total price of less than $ 7,177,461.48.  Plaintiff's bid, with a total price of  (REDACTED), was eliminated because it was outside the competitive range.  Accordingly, it was not afforded RS-A priority at Step 4, and the USAF eventually selected the offer submitted by Crystal Enterprises, Inc., at Step 5.

On March 8, 2011, Plaintiff filed an Application for Temporary Restraining Order and Motion for Preliminary Injunction (doc. 2).  Specifically, Plaintiff argued that Defendants had violated the RSA in failing to award priority to its bid.  Although Plaintiff is pursuing the administrative remedies provided for, and required by, the RSA, *see* 20 U.S.C. §§107d-1(b) and 107d-2, it seeks injunctive relief staying any contract award or contract performance pending the resolution of this challenge.

JURISDICTION

It is well settled that federal courts are courts of limited jurisdiction; I may only hear those cases which have been entrusted to me under a jurisdictional grant by Congress. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); and *United States v. Nixon*, 418 U.S. 683 (1974)). Petitioners assert that jurisdiction in this court is afforded by the R-SA as well as the All Writs Act, 28 U.S.C. §1651(a). I address each in turn.

*Randolph-Shepard Act*

As Plaintiffs acknowledge, "when a SLA believes a violation of the R-SA has occurred in connection with a proposed award for a procurement, the SLA is required to pursue its administrative remedies by arbitration at the Department of Education." Complaint (doc. 1) at 7. Although the language of the RSA addressing exhaustion of administrative remedies is on its face permissive, *see* 20 U.S.C. § 107d-1(b) (providing that an SLA "may file a complaint with the Secretary who will convene a panel to arbitrate the dispute . . ."), the vast majority of courts have concluded, and I agree, that a party seeking to challenge an agency's compliance with the R-SA must first exhaust its administrative remedies before seeking judicial review. *See, e.g., Randolph-Shepard Vendors of America, et al. v. Weinberger*, 795 F.2d 90, 104 (D.C. Cir. 1986).

Despite the general rule that exhaustion of administrative remedies is a prerequisite to judicial review, Plaintiffs argue that "it is well-settled that federal courts have the judicial authority to enter injunctive relief pending the resolution of an administrative proceeding."[2]

---

[2]  There are exceptions to the exhaustion requirement, allowing courts to exercise jurisdiction when, "resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate." *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998) (citations omitted). The first exception is inapplicable here, and the second closely parallels the question of irreparable harm discussed below. *See infra* p. 6 n3, pp. 8-10.

Brief in Support of Motion for Preliminary Injunction (doc. 3) at 9.  In support of this "well-settled" proposition, Plaintiffs cite two Supreme Court cases:  *Arrow Transp. Co. v. Southern Ry. Co.*, 372 U.S. 658, 671 n.22 (1963) and *Fed. Trade Comm'n v. Dean Foods Co., et al.*, 384 U.S. 597, 604 (1965).  Although these cases hold that courts have the power "to preserve [their] jurisdiction or maintain the status quo by injunction pending review of an agency's action," *Dean Foods*, 384 U.S. at 604, this authority is grounded in the All Writs Act.  *See Dean Foods*, 384 U.S. at 599 ("At issue here is the power of the Court of Appeals under the All Writs Act . . . .").  Accordingly, I shift my focus to determining if, and under what circumstances, I may exercise jurisdiction over Plaintiff's motion under the All Writs Act.

*All Writs Act*

The All Writs Act empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. §1651.  This expansive grant of authority includes a "limited judicial power to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through prescribed channels."  *Arrow Transp. Co.*, 372 U.S. at 671 n. 22.

In *Dean Foods*, a narrowly-divided Court employed a seemingly expansive view of this "limited" power.  Relying upon a line of cases culminating in the above-cited footnote from *Arrow Transp.*, the Court held that the power to enter a status quo injunction "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may later be perfected."  *Dean Foods*, 384 U.S. at 603 (citing *Arrow Transp. Co.*, 372 U.S. at 671 n.22; *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1942); *Scripps-Howard Radio, Inc. v. Fed. Commc'ns Comm'n*, 316 U.S. 4 (1942); *McClellan v. Carland*, 217 U.S. 268 (1910)) .  In

holding that the Federal Trade Commission could seek an injunction pending its review of a

merger which it believed, but had not yet administratively determined, was anticompetitive, the

Court relied heavily upon an extremely compelling set of facts.  Namely, the FTC argued that

absent the sought-after injunctive relief, the resultant sharing and division of assets between the

merging companies would render impossible the fashioning of an effective administrative

remedy.  *Id.* at 600.

The Court has, however, retreated from this expansive view.  As the Court has

reaffirmed, the All Writs Act "is to be used sparingly and only in the most critical and exigent

circumstances."  *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004).

Thus, in order to justify my exercise of jurisdiction under the All Writs Act to provide the

equitable relief it seeks, Plaintiff  "at the very least must make a showing of irreparable injury

sufficient in kind and degree to override these factors cutting against the general availability of

preliminary injunctions . . . ."[3] *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974).

As described by the Eleventh Circuit, "the proper analysis adjusts the standard

requirements for the requested preliminary injunction in light of (1) whether refusal to grant the

injunction will defeat the court's review jurisdiction and (2) whether Congress intended to permit

or to preclude a status quo injunction."  *V.N.A. of Greater Tift Cty., Inc.*, 711 F.2d 1020, 1029

(11th Cir. 1983), *cert. denied*, 466 U.S. 936 (1984).[4]  If in my review jurisdiction is not in

---

[3]  As noted above, the question of irreparable harm closely parallels an exception to the
requirement that a party exhaust all administrative remedies before seeking judicial review. *See
supra* n. 2.

[4]  Although the Tenth Circuit has not addressed this issue, other District Courts considering the
propriety of granting of injunctive relief under the All Writs Act have adopted the approach
articulated by the Eleventh Circuit.  *See Frankford Hosp. v. Davis*, 647 F. Supp. 1443, 1447
(E.D. Pa. 1986); *Landmark Med. Ctr. v. Bowen*, 700 F. Supp. 350, 351 (W.D. Tex. 1988);
*Redbud Hosp. Dis. v. Heckler*, 1984 U.S. Dist. LEXIS 24704 (N.D. Cal. July 30, 1984);

jeopardy and Congress has not evidenced an intent to permit a status quo injunction, Plaintiff

must justify the extraordinary relief it seeks by demonstrating a virtual certainty of irreparable

harm. *See id.* at 1034.[5] Thus, in determining whether it is proper to grant Plaintiffs the relief

they seek under the All Writs Act, I must examine these factors to determine whether Plaintiff

has made the requisite showing.

    In considering the first factor, it is apparent that it is not necessary to grant an injunction

to preserve my review jurisdiction. On this point, a careful analysis of *Dean Foods* is

instructive. In finding the district court's grant of injunctive relief proper, the Supreme Court

noted that "an effective remedial order, once the merger was implemented, would [have been]

otherwise <u>impossible</u>, thus rendering the enforcement of any final decree or divestiture futile."

384 U.S. at 605 (emphasis added). Quite simply, absent preliminary injunctive relief, the

merging parties would have ceased to exist. In the instant case, it is apparent that Plaintiff's

existence is not at risk. The SLA will continue to operate whether or not it is awarded the

contract to provide dining services at the HCI Dining Facility.

    Plaintiff also argues that, absent the sought after injunctive relief, the incumbent vendor

at the HCI Dining Facility "will have no further business for his company, Daybreaker Services,

Inc., and he fully expects that his company will have to cease doing business after March 31,

---

[5]  In *V.N.A. of Greater Tift County*, the Eleventh Circuit held that a party must make a heightened
showing of each of the traditional preliminary injunction standards to justify preliminary
injunctive relief under the All Writs Act. 711 F.2d at 1034. I am not convinced that this
comports with the other concerns inherent in granting a preliminary injunction pending
resolution of Plaintiff's arbirtarion claim – namely, interfering with the arbitration panel's
decision. As Judge Godbold noted in dissent, "the court's virtual certainty [of success on the
merits] standard . . . necessitates an even firmer conclusion on the merits and is even more likely
to straitjacket the administrative board." *Id.* at 1037. I need not resolve this issue, however, as I
find that Plaintiff's have failed to make an adequate showing of irreparable injury.

2011."  Plaintiff's Opening Brief (doc. 3) at 13.  Even if Mr. Hudson's business ceased to exist,

however, I would still have jurisdiction over <u>Plaintiff's</u> complaint once the arbitration process is

completed.

I now turn to an analysis of Congressional intent as it relates to the granting of

preliminary relief under the RS-A.  As noted above, Congress provided an administrative remedy

for complaints under the RS-A.  *See* 20 U.S.C. § 107d-1(b).  According to the Sixth Circuit:

> Congress' decision to provide administrative and arbitration remedies for
> aggrieved blind vendors clearly evidences a policy judgment that the federal
> courts should not be the tribunal of first resort for the resolution of such
> grievances. Rather congressional policy as reflected in the 1974 amendments is
> that blind vendors must exhaust their administrative and arbitration remedies
> before seeking review in the district courts.

*Fillinger v. Cleveland Soc'y for the Blind*, 587 F.2d 336, 338 (6th Cir. 1978).  Congress was,

however, conspicuously silent regarding the availability of preliminary relief pending a party's

exhaustion of the statutorily prescribed administrative remedies.  Accordingly, I decline to infer

any intent to permit or preclude such relief.  *Cf. Scripps-Howard Radio*, *Inc.*, 316 U.S. at 11

(Noting that "the search for significance in the silence of Congress is too often the pursuit of a

mirage").  This factor, therefore, is neutral in my analysis.  In light of my finding on the first

factor, however, Plaintiff must demonstrate a virtual certainty of irreparable harm as required by

the Supreme Court in *Murray* and articulated by the Eleventh Circuit to justify preliminary

injunctive relief under the All Writs Act.

*Virtual Certainty of Irreparable Injury*

Plaintiff cites four irreparable harms which will result if it is not granted a preliminary

injunction preserving the status quo pending the resolution of its arbitration claim.  First, Plaintiff

asserts two economic harms that, absent the sought after injunctive relief, will significantly

impact Plaintiff and Mr. Hudson.  Specifically, Plaintiff asserts that "Mr. Hudson will have no further business for his company, Daybreaker Services, Inc., and he fully expects that his company will have to cease doing business after March 31, 2011."  Plaintiff's Opening Brief (doc. 3) at 13.  Plaintiff also argues that it will lose the "set-aside" funds that Mr. Hudson must pay the State for his R-SA contract as well as the federal matching funds provided by the federal government to the Plaintiff as the SLA.

I do not discount the gravity of these economic harms.  As Plaintiff asserts, for all intents and purposes, on expiration of his contract with the USAF, Mr. Hudson will lose his livelihood. Ordinarily, however, these economic injuries are not considered irreparable harm.  As the Eleventh Circuit noted in *V.N.A. of Greater Tift County*, even bankruptcy is not sufficient evidence of irreparable harm.  711 F.2d at 1034.  Plaintiff argues that this is no ordinary case, because even if it were to prevail on its arbitration claim, it would not be made whole because the arbitration panel lacks the authority to award monetary damages caused by the delay. Although this argument is true, it ignores the fact that the RS-A gives the Secretary of Education broad remedial powers.  *See Randolph-Shepard Vendors of America, et al.*, 795 F.2d at 109 (Holding that "the Secretary of Education has broad remedial powers under the Act"). Furthermore, were I to find Defendants had violated the RS-A, monetary compensation provides the adequate remedy at law for these potential harms.

Plaintiff does not, however, rely solely on economic harms to justify its requested relief. Plaintiff argues that once Mr. Hudson loses the contract to provide services at the HCI Dining Facility he will "lose a very talented team" and his support contractor.  Although these harms are real, it is unclear how they are irreparable.  Plaintiff has not shown that it will be impossible for

9

Mr. Hudson to re-hire his team members and support contractor, or recruit new team members and a new support contractor if necessary, to staff the HCI Dining Facility should he eventually be re-awarded the contract.  This is not sufficient evidence of irreparable harm to justify extraordinary relief under the All Writs Act.

Finally, Plaintiff alleges that once the contract for providing services at the HCI Dining Facility is awarded to a non-RS-A vendor, the services at the facility will not be subject to RS-A priority.  Plaintiff fears that once the contract is awarded to a non-SLA, it will be "poached" and subject to the Javits-Wagner-O'Day Act ("JWOD Act").  41 U.S.C. §§ 46-48c.  As Defendants note, however, even if this argument were true, it ignores the ability of judicial recourse.  "If [Plaintiff's] arbitration complaint and any subsequent judicial review result in a finding that the Air Force improperly awarded the contract to a party other than Colorado, then the priority afforded to the contract under the RS-A would be restored going forward."  Defendants' Response Brief (doc. 14) at 42.[6]

Even under the irreparable harm standard applicable to "normal" requests for preliminary injunctions, none of Plaintiff's alleged harms are irreparable.  And they certainly do not "override [the] factors cutting against the general availability of preliminary injunctions . . . " under the All Writs Act.  *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974).  Accordingly, I need not address the other preliminary injunction factors.

---

[6]  Because I find this alleged harm reparable, I need not address the merits of Plaintiff's claim that the HCI Dining Facility contract is subject to poaching under the JWOD Act.  It is important to note, however, that Defendants strenuously, and somewhat convincingly, deny that this contract is subject to being removed from the realm of the RS-A.  *See* Defendants' Brief in Response (doc. 14) at 42-43 n.10.

10

CONCLUSION

Although expansive in scope, the All Writs Act is limited in its application.  As the Supreme Court has repeatedly emphasized, the All Writs Act is an extraordinary exercise of judicial authority which "is to be used sparingly and only in the most critical and exigent of circumstances." *Wis. Right to Life, Inc.*, 542 U.S. at 1306.  Plaintiff has failed to establish the existence of such circumstances in this case.

Indeed, a contrary result would be inconsistent with the priority contracting scheme Congress  created in passing the Randolph-Shepard Act.  By choosing to participate in the RS-A program, vendors and SLAs "take a knowing risk," and "there is no reason to think that the straits in which this [vendor and SLA] find[ ] [themselves] 'so far depart from the normal situation' as to justify fundamental deviation from the statutory scheme." *V.N.A. of Greater Tift Cty.Inc.*, 711 F.2d at 1034 (quoting *Sampson*, 415 U.S. at 92 n.68).  As Defendants note, a contrary finding would result in a windfall to any incumbent RS-A contractor who bids unsuccessfully on a contract's renewal.  Defendants' Response Brief (doc. 14) at 42.

In such circumstances, it is inappropriate to interfere with the Congressionally mandated scheme for resolving disputes under the RS-A and the Department of Defense's discretion in soliciting and selecting vendors for the provision of essential services.  Accordingly, Plaintiff's Motion for Preliminary Injunction is DENIED.  Defendant's Motion to Dismiss for Lack of Jurisdiction (doc. 17) is GRANTED.

Dated:  April 26, 2011                                            BY THE COURT:

                                                                              /s/ John L. Kane
                                                                              Senior U.S. District Judge

11